Celso **RODRIGUEZ CIRILO,** et al., Plaintiffs,

v.

Juan B. **GARCIA, et al., Defendants.**

Civ. No. 94–2230 (HL).

United States District Court, D. Puerto Rico.

Dec. 13, 1995.

Kevin G. Little, David Efron Law Offices, Rio Piedras, PR, for plaintiffs.

Isabel Abislaiman–Quilez, Department of Justice, Federal Litigation Division, San Juan, PR, for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion for summary judgment filed by Defendants Juan B. García ("García") and Juan Castro Alicea ("Castro Alicea") in this action for damages under section 1983.[1] Defendants are officers in the Puerto Rico Police Department. This action arises out of Francisco Rodríguez Cirilo's ("Francisco") stabbing of his brother Celso Rodríguez Cirilo ("Celso"). Celso, his wife, and their children are the plaintiffs in this action.

The Court reviews the record in the light most favorable to Plaintiffs and draws all reasonable inferences in their favor. See LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.1993). Pursuant to the Mental Health Code of Puerto Rico, commonly known as "Law 116,"[2] Jorge Rodríguez Nieves ("Jorge") filed a petition on March 16, 1994, to have Francisco involuntarily detained and subjected to a psychiatric examination.[3] Jorge, a nephew of Francisco and Celso, stated in his petition that Francisco had a prior record of treatment in a mental health institution and that he had made threats to kill with a machete, knife or other sharp object.[4] On March 17, 1994, a municipal judge in San Juan granted the petition and issued an order that Francisco be examined.[5] The order authorized any law enforcement officer to detain Francisco and to take him to a psychiatric hospital.[6] The order also stated that Francisco could not be detained for more than twenty-four hours.[7] Additionally, the order provided that if the examining doctor believed that Francisco should be hospitalized for longer than twenty-four hours, the doctor should prepare a report and notify Jorge, who in turn was to notify the court.[8]

On March 17, 1994, Jorge, Jerry Rodríguez Cirilo ("Jerry"), and Juan Luis Rodríguez Cirilo ("Juan Luis") went to the Río Grande police station to have the detention order enforced.[9] Jerry and Juan Luis are siblings of Francisco. Defendants Garcia and Castro Alicea were at the station and attended to Francisco's family members.[10] The officers called in paramedics to accompany them.[11] The paramedics, the police offi-

---

1. 42 U.S.C.A. § 1983 (West 1994).

2. P.R.Laws Ann. tit. 24, §§ 4001–6151 (Supp. 1991).

3. See docket no. 33, Statement of Contested Facts at 2, exhibit D–2.

4. See docket no. 33, Statement of Contested Facts at 2–3, exhibit D–2.

5. See docket no. 33, Statement of Contested Facts at 2, exhibit D–1.

6. See docket no. 33, Statement of Contested Facts at 2, exhibit D–1. The order authorized any security agent to detain Francisco. A police officer is defined by Law 116 as a security agent.

See P.R.Laws Ann. tit. 24, § 4002(16) (Supp. 1991).

7. See docket no. 33, exhibit D–1. Law 116 provides that a patient subject to an involuntary admission may be held for no more than twenty-four hours. See P.R.Laws Ann. tit. 24, § 6006 (Supp.1991).

8. See docket no. 33, exhibit D–1.

9. See docket no. 36, paragraph 4.

10. See docket no. 33, exhibit A at 5.

11. See docket no. 33, exhibit A at 5; docket no. 36, paragraph 5.

cers, and the family members found Francisco at a local establishment.[12] However, Francisco said that he was being treated at the veteran's hospital and he refused to let the officers take him to a hospital.[13] The officers did not take Francisco into custody.[14] Jorge tried to convince the officers that Francisco was dangerous and should be detained, but the officers did not heed his pleas.[15] The police officers instead informed the family members that they themselves should take Francisco to the veteran's hospital for treatment.[16] The police officers left and did not enforce the detention order.[17] The family members did not obtain another detention order and Francisco was not taken involuntarily to a hospital for examination.[18] Plaintiffs and other family members, however, had informally asked the police to take Francisco into protective custody.[19]

More than two weeks later, on April 6, 1994, Plaintiff Celso visited his mother.[20] Francisco was also at their mother's house at the time.[21] During his visit, Celso suggested that Francisco get some water for their mother.[22] A few minutes later, while Celso was on the balcony, Francisco attacked him and stabbed him in the chest with a knife.[23] Celso suffered injuries to his chest and to his digestive and respiratory systems.[24] Plaintiffs claim that Defendants' failure to detain Francisco constituted a violation of Celso's due process rights.[25] They further allege that Defendants conspired with Francisco. Plaintiffs have also brought Puerto Rico law claims pursuant to the Court's supplemental jurisdiction.[26] In their motion for summary judgment, Defendants argue that Celso has not suffered a violation of his constitutional rights. For the reasons set forth below, the Court grants Defendants' motion for summary judgment.

## DISCUSSION

■■■ Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See Fed. R.Civ.P. 56(c). The party moving for sum-

12. See docket no. 33, exhibit A at 5; docket no. 36, paragraph 6.

13. See docket no. 33, Statement of Contested Facts at 4–5, exhibit A at 5; docket no. 36, paragraph 6.

14. See docket no. 33, Statement of Contested Facts at 3–5.

15. See docket no. 33, Statement of Contested Facts at 5; docket no. 36, paragraph 7.

16. See docket no. 33, Statement of Contested Facts at 5, exhibit L at 38–42.

17. See docket no. 33, Statement of Contested Facts at 3.

18. See docket no. 33, Statement of Contested Facts at 6; docket no. 36, paragraph 9.

19. See docket no. 33, Statement of Contested Facts at 3, exhibit N at 2.

20. See docket no. 33, Statement of Contested Facts at 7–8, exhibit N at 4.

21. See docket no. 33, Statement of Contested Facts at 8; docket no. 38, exhibit O at 22–30.

22. See docket no. 33, Statement of Contested Facts at 8, exhibit N at 4; docket no. 38, exhibit O at 23–25.

23. See docket no. 33, Statement of Contested Facts at 8, exhibit N at 4–5; docket no. 38, exhibit O at 22–30.

24. See docket no. 33, exhibit N at 5.

25. Plaintiffs in their complaint did not specify which of them suffered a deprivation of their constitutional rights and which constitutional rights were violated. The Court, in its ruling on a motion to dismiss filed by Defendants, treated Plaintiffs' claim as one for a violation of due process rights. See docket no. 21 at 2 n. 2. The Court also held that, based on Valdivieso Ortiz v. Burgos, 807 F.2d 6, 7–10 (1st Cir.1986), only Celso could bring a claim for a violation of due process rights.

Plaintiffs have not contested the Court's treating this claim as one for a violation of due process rights only. Moreover, Plaintiffs in their opposition to the motion for summary judgment make their arguments based only on a claim for a violation of due process rights. See docket no. 33, Opposition to Motion for Summary Judgment at 1, 16–20, 28–29. Additionally, the only legal theory that Plaintiffs raise in the pretrial order is one based on due process rights. See docket no. 35 at 15–18. Accordingly, the Court will treat this claim as one for a violation of Celso's due process rights. The other Plaintiffs remain in this action under the Puerto Rico law claims.

26. See 28 U.S.C.A. § 1367 (West 1993).

mary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *LeBlanc,* 6 F.3d at 841. The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

■ There are two essential elements to a claim brought pursuant to section 1983: (1) the conduct complained of must have been committed by defendants acting under color of state law and (2) the conduct must have deprived plaintiff of his rights under the Constitution or laws of the United States. *Martínez v. Colón,* 54 F.3d 980, 984 (1st Cir.1995); *Voutour v. Vitale,* 761 F.2d 812, 819 (1st Cir.1985). In the case before the Court, Defendants argue that they were not acting under color of state law. The Court disagrees. The conduct of which Plaintiffs complain is Defendants' failure as police officers to detain Francisco when his family members sought to enforce the detention order on March 17, 1994. Francisco's family members went to the Río Grande police station to have the order enforced.[27] Following the encounter on March 17, 1994, with Francisco, Defendants filled out a police report of the incident.[28] Defendants were acting in their capacity as Puerto Rico police officers. The conduct in question was committed by Defendants while they were acting under color of state law. *See Soto v. Carrasquillo,*

878 F.Supp. 324, 327 (D.P.R.1995); *Martínez Correa v. Lopez Feliciano,* 759 F.Supp. 947, 953 (D.P.R.1991). Thus, the first essential element of a section 1983 claim has been met.

### 1. Alleged deprivation of a federally protected right

■ The second essential element of a section 1983 claim has two prongs: (1) there must have been a deprivation of a federally protected right and (2) the defendant's conduct must have caused the deprivation. *Gutiérrez–Rodríguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989); *Voutour,* 761 F.2d at 819; *Soto,* 878 F.Supp. at 327. With regard to the first prong, Plaintiffs claim that Celso was deprived of his due process rights. The Due Process Clause does not require the state to protect the life or liberty of its citizens from harms inflicted by private actors. *DeShaney v. Winnebago County D.S.S.,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989); *Pinder v. Johnson,* 54 F.3d 1169, 1174 (4th Cir.1995); *L.W. v. Grubbs,* 974 F.2d 119, 121 (9th Cir.1992). "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney,* 489 U.S. at 197, 109 S.Ct. at 1004. There may, however, be certain limited exceptions to this rule of nonliability. *Martínez,* 54 F.3d at 984–85; *Pinder,* 54 F.3d at 1174–76; *Grubbs,* 974 F.2d at 121. A state may be liable if it fails to protect an individual who is in the state's custody or "functional custody." *DeShaney,* 489 U.S. at 198–201 & 201 n. 9, 109 S.Ct. at 1004–06 & 1006 n. 9; *Martínez,* 54 F.3d at 984; *see also Souza v. Pina,* 53 F.3d 423, 426–27 (1st Cir.1995); *Monahan v. Dorchester Counseling Ctr., Inc.,* 961 F.2d 987, 991–92 (1st Cir. 1992). A state may also be liable if state actors have done anything to make an individual more vulnerable to the harms of a private actor. *DeShaney,* 489 U.S. at 201, 109 S.Ct. at 1006; *Martínez,* 54 F.3d at 984–85; *Souza,* 53 F.3d at 427; *Monahan,* 961 F.2d at 992–93. For there to be liability under this last exception, however, the state actors must have taken affirmative acts that

---

**27.** *See* Docket no. 36, paragraph 4.

**28.** *See* Docket no. 28, exhibit 1.

render the individual more vulnerable to private harms. *Martínez,* 54 F.3d at 985–86; *Graham v. Independent School Dist. No. I–89,* 22 F.3d 991, 995 (10th Cir.1994); *Grubbs,* 974 F.2d at 121; *Monahan,* 961 F.2d at 992–93; *see also Reed v. Gardner,* 986 F.2d 1122, 1127 (7th Cir.1993) (Affirmative act was police officers' alleged arresting and taking into custody a sober driver, leaving the car to a drunk driver who subsequently crashed into plaintiffs); *Dwares v. City of New York,* 985 F.2d 94, 98–100 (2nd Cir.1993) (Affirmative acts were police officers' conspiring with and assuring "skinheads" that they would not be arrested for beating up flag burners; these "skinheads" subsequently assaulted plaintiff); *Freeman v. Ferguson,* 911 F.2d 52, 54–55 (8th Cir.1990) (Police chief directed his officers not to arrest his friend who subsequently killed plaintiffs).

In the case before the Court, Celso suffered harm at the hands of a private actor. Plaintiffs do not argue that Defendants had a constitutional duty to protect Celso because he was in the state's custody or "functional custody." Thus, Defendants would be liable only if they took affirmative acts that rendered Celso more vulnerable to private harms. *See Martínez,* 54 F.3d at 985–86; *Graham,* 22 F.3d at 995; *Grubbs,* 974 F.2d at 121; *Monahan,* 961 F.2d at 992–93. The conduct of which Plaintiffs complain is Defendants' failure on March 17, 1994, to detain Francisco Rodríguez Cirilo and their failure to take him to a hospital for a psychiatric evaluation.[29] There is uncontested evidence that Defendants failed to detain Francisco to have him evaluated.[30] This evidence, however, is of Defendants' failure to act. If Plaintiffs are to bring a successful action for a due process claim based on private violence, Defendants must have taken *affirmative acts* that rendered Celso more vulnerable to Francisco's actions. The only affirmative act by Defendants is that they told Jorge Rodrí-guez Nieves, Jerry Rodríguez Cirilo, and Juan Luis Rodríguez Cirilo that they should take Francisco to a veteran's hospital for treatment.[31] This conduct may have been an example of Defendants' shirking their duty under Law 116 to detain Francisco. This conduct is not the kind of affirmative state act, however, that would render Celso more vulnerable to Francisco's actions and thus would create state liability for private violence. *See Souza,* 53 F.3d at 427. As discussed more fully in the following section on causation, Francisco's conduct was " 'too remote a consequence' " of Defendants' acts to create liability under the Due Process Clause. *See Graham,* 22 F.3d at 995 (quoting *Martínez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980)).

■ Plaintiffs have also alleged that Defendants conspired with Francisco. An allegation of a conspiracy must be supported by material facts, not mere conclusory statements. *Dwares,* 985 F.2d at 99; *Slotnick v. Garfinkle,* 632 F.2d 163, 165 (1st Cir.1980); *Deodatti Colon v. Rosado Rivera,* 846 F.Supp. 156, 161 (D.P.R.1993). A plaintiff alleging conspiracy must document with some degree of particularity the defendants' conspiracy to violate constitutional rights. *Deodatti Colon,* 846 F.Supp. at 161. In the case before the Court, Plaintiffs have failed to adduce any evidence in support of their allegation of conspiracy.

■ In their opposition to the motion for summary judgment, Plaintiffs argue that Defendants knowingly disregarded the detention order, in violation of Law 116. Defendants may have violated the terms of the detention order and of Law 116. However, a state actor's failure to comply with a state law duty is not, by itself, sufficient to give rise to a claim under section 1983. *Martínez,* 54 F.3d at 989. As discussed above, Plaintiffs have failed to show that this alleged

---

29. In addition to the detention order, Plaintiffs claim that they had made informal requests to the police to take Francisco into protective custody. *See* docket no. 33, Statement of Contested Facts at 3, exhibit N at 2. Plaintiffs present no evidence, however, as to when these requests were made and whether the requests were made to Defendants. Even assuming that these requests were made to the defendants in this ac-tion, however, the Court would, for the reasons set forth in this opinion and order, still grant the motion for summary judgment.

30. *See* docket no. 33, Statement of Contested Facts at 3–5.

31. *See* docket no. 33, Statement of Contested Facts at 5, exhibit L at 38–42.

violation of state law constituted a violation of a federal right. In their opposition, Plaintiffs also rely on the Court's opinion and order of July 27, 1995.[32] In that opinion and order, the Court denied Defendants' motion to dismiss for failure to state a claim. Plaintiffs seek to use the Court's reasoning in that opinion and order to oppose Defendants' motion for summary judgment. It is axiomatic that the standard for a motion to dismiss under Federal Rule 12(b)(6) is distinct from the standard for a motion for summary judgment under Federal Rule 56. In order to properly oppose Defendants' motion for summary judgment, Plaintiffs must adduce evidence in support of the allegations in their complaint. *See* Fed.R.Civ.P. 56(e); *LeBlanc,* 6 F.3d at 841. Plaintiffs may not rely on the allegations in the complaint or on the Court's earlier ruling that their complaint contained allegations which, if true, stated a claim for which relief could be granted. Plaintiffs have failed to adduce evidence that Defendants conspired with Francisco and that Defendants took affirmative actions that deprived Celso of a federally protected right. Accordingly, there is no genuine issue of material fact as to this prong of a section 1983 claim.

### 2. *Causation*

 The second prong that a section 1983 plaintiff must meet is a showing that the defendant's conduct caused the deprivation of plaintiff's rights. *Gutiérrez–Rodríguez,* 882 F.2d at 559; *Soto,* 878 F.Supp. at 327. Inquiries into causation in section 1983 claims should refer to state law tort principles. *Gutiérrez–Rodríguez,* 882 F.2d at 561; *Soto,* 878 F.Supp. at 331. Under Puerto Rico law, a negligent defendant will be liable for the consequences attributable to a reasonably foreseeable intervening cause, including the conduct of a third party. *Widow of Andino v. W.R.A.,* 93 P.R.R. 168, 178 (1966); *Marshall v. Perez Arzuaga,* 828 F.2d 845, 848 (1st Cir.1987). An unforeseeable or abnormal act by an intervening third party, however, will break the chain of causality.

*Widow of Andino,* 93 P.R.R. at 178; *Perez Arzuaga,* 828 F.2d at 848; *Soto,* 878 F.Supp. at 331–32. There is not liability under section 1983 for private violence when the private individual's actions were too remote from the challenged state action. *Gazette v. City of Pontiac,* 41 F.3d 1061, 1066 (6th Cir.1994); *Graham,* 22 F.3d at 995; *Soto,* 878 F.Supp. at 331–32. Generally, a police officer's failure to make an arrest for a single incident should not be found to have caused a subsequent incident of violence. *Ricketts v. City of Columbia, Missouri,* 36 F.3d 775, 780 (8th Cir.1994).

 In the case before the Court, Plaintiffs allege that Defendants' failure to detain Francisco on March 17, 1994, caused the stabbing of Cirilo on April 6, 1994. In support of their allegation, Plaintiffs have submitted a declaration by Dr. Agustin García, a clinical psychologist.[33] Dr. García states that he has examined Plaintiffs and that based on his examinations, it is his opinion that Francisco had a serious personality disorder and that this disorder "played a causative role" in Francisco's stabbing of Cirilo.[34] Dr. García further opines that if Francisco had been detained on March 17, 1994, he would have received effective treatment and his attack on Cirilo would have been prevented.[35] Dr. García does not state that he has examined Francisco or his medical records. It appears that Dr. García's opinion on the causation of the stabbing is based entirely on his interviews with Plaintiffs.

 If specialized or scientific knowledge is necessary to assist the trier of fact, a witness qualified as an expert may present an opinion on the matter. Fed.R.Evid. 702. For expert testimony to be admissible, it must be reliable and relevant. *Cook v. American S.S. Co.,* 53 F.3d 733, 737–38 (6th Cir.1995). A trial judge must make a preliminary assessment of the reliability of an expert's testimony. *Hoult v. Hoult,* 57 F.3d 1, 4 (1st Cir.1995). The trial judge has a "gatekeeping" function to ensure that an expert's reasoning and methodology are valid

---

32. *See* docket no. 21.

33. *See* docket no. 33, exhibit U.

34. *See* docket no. 33, exhibit U.

35. *See* docket no. 33, exhibit U.

and that the expert's testimony can properly be applied to the facts at issue. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, ——, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993); *Cook,* 53 F.3d at 738. The expert testimony must rest on a reliable foundation and be relevant to the issue at hand. *Daubert,* —— U.S. at ——, 113 S.Ct. at 2799; *Vadala v. Teledyne Industries, Inc.,* 44 F.3d 36, 39 (1st Cir.1995).

In the case before the Court, Plaintiffs' only evidence that Defendants' conduct caused Celso's injuries is Dr. García's opinion that if Francisco had been detained on March 17, 1994, he would have received effective treatment and he would not have stabbed Cirilo. The Court notes, however, that Dr. García does not claim to have examined Francisco or his medical history or records. The basis of his conclusion regarding the nature and treatability of Francisco's disorder is his interviews with Plaintiffs. None of Plaintiffs have an expertise in psychiatry or psychology. Dr. García's opinion regarding Francisco's mental health was made without the benefit of any examination of Francisco or his records. Thus, the Court finds that the opinion does not rest on a reliable foundation. Therefore, it must be excluded. Moreover, even if the Court were to consider this evidence, it constitutes, at most, "a scintilla of evidence in support of the plaintiff's position" and would not be sufficient to defeat Defendants' motion for summary judgment. *See Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

■ More harmful to Plaintiffs' case than their lack of evidence, however, is the fact that Francisco's conduct was so shocking that it was not reasonably foreseeable. His stabbing of Celso constitutes an intervening cause whose unforeseeability and abnormality break the chain of causality to Defendants' conduct. *See Soto,* 878 F.Supp. at 332. It would be too speculative to find that Defendants' failure on March 17, 1994, to detain Francisco and to take him to a hospital, where he was to have been examined and held for only twenty-four hours, caused the stabbing of Celso more than two weeks later on April 6, 1994. *See id.* Francisco's actions were simply "'too remote a consequence'" of Defendants' acts to allow a finding that these acts caused Celso's injuries. *See Graham,* 22

F.3d at 995 (quoting *Martinez,* 444 U.S. at 285, 100 S.Ct. at 559). Accordingly, there is no genuine issue of material fact as to the causation prong of Plaintiff's section 1983 claim.

■ Plaintiffs have also brought a Puerto Rico law claim against Defendants pursuant to the Court's supplemental jurisdiction. The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). If federal law claims are dismissed before trial, however, the state law claims should also be dismissed. *Id.* at 726, 86 S.Ct. at 1139; *Figueroa Ruiz v. Alegria,* 896 F.2d 645, 650 (1st Cir.1990); *Soto,* 878 F.Supp. at 332. Accordingly, the Court hereby dismisses without prejudice Plaintiffs' Puerto Rico law claims.

WHEREFORE, the Court holds that Plaintiffs have failed to demonstrate a genuine issue of material fact as to their allegations that Celso suffered a deprivation of a federally protected right and that Defendants caused this deprivation. Accordingly, the Court hereby **grants** Defendants' motion for summary judgment and dismisses Plaintiffs' claims.

**IT IS SO ORDERED.**