**Celso RODRIGUEZ–CIRILO, et al., Plaintiffs–Appellants,**

**v.**

**Juan B. GARCIA, et al., Defendants–Appellees.**

No. 96–1306.

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1996.

Decided June 2, 1997.

Kevin G. Little, Fresno, CA, with whom Law Offices of David Efrón, San Juan, PR, was on brief, for appellants.

Edgardo Rodríguez–Quilichini, Assistant Solicitor General, Department of Justice, San Juan, PR, with whom Carlos Lugo–Fiol, Solicitor General, San Juan, PR, and Edda Serrano–Blasini, Deputy Solicitor General, Guaynabo, PR, were on brief, for appellees.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and DiCLERICO, Jr.,* District Judge.

TORRUELLA, Chief Judge.

Plaintiffs-appellants are six family members, one of whom, Celso Rodríguez–Cirilo ("Celso"), was the victim of a stabbing. Celso was stabbed by his brother, Francisco Rodríguez–Cirilo ("Francisco"), who is not a party to the suit. The family members filed a civil rights damages action under 42 U.S.C. § 1983 (1994) against two officers of the

* Of the District of New Hampshire, sitting by designation.

Puerto Rico Police Department alleging that the officers' failure to enforce a temporary detention order against Francisco caused the injury to Celso and thus violated his constitutional rights.[1]

The district court held that plaintiffs failed to establish that a due process right protected under section 1983 was violated by the officers' failure to prevent private violence, and also held that plaintiffs could not establish causation. Having reviewed the record and the parties' briefs on appeal, we find that the district court's treatment of the causation issue correctly identifies a sufficient ground for granting summary judgment to the defendants. We therefore do not reach the nettlesome legal question of whether, in light of *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), a police officer's knowing refusal to carry out the express terms of a non-discretionary detention order can be deemed an "affirmative act" that, by increasing the risk of private harm to those sought to be protected by the order, may trigger due process concerns. *Cf. DeShaney*, 489 U.S. at 201, 109 S.Ct. at 1006; *Frances–Colón v. Ramírez*, 107 F.3d 62, 64 (1st Cir. 1997) (discussing the limited scope for relief under section 1983 where "the government employee, in the rare and exceptional case, affirmatively acts to increase the threat of harm to the claimant"); *Soto v. Flores*, 103 F.3d 1056, 1064 (1st Cir.1997) ("In a creation of risk situation, where the ultimate harm is caused by a third party, courts must be careful to distinguish between conventional torts and constitutional violations.").

## BACKGROUND

In the summary judgment context, we relate all material facts in genuine dispute in the light most favorable to the party resisting summary judgment, here the plaintiffs. *Sánchez v. Alvarado*, 101 F.3d 223, 225 n. 1 (1st Cir.1996). On March 16, 1994, Jorge Rodríguez–Nieves ("Jorge"), a nephew of both Celso and Francisco who is not a party in the instant suit, filed a petition pursuant to the Mental Health Code of Puerto Rico ("Law 116"),[2] to have his uncle Francisco involuntarily detained for psychiatric examination. The petition stated that Francisco presented a danger to himself and others and had threatened to kill with a sharp object, such as a machete or a knife. On March 17, 1994, a San Juan municipal court judge responded to the petition by issuing an order that Francisco be detained for examination. The temporary detention order authorizes a law enforcement officer to detain the subject—with the assistance of health care personnel if necessary—and to take him to a psychiatric institution where he can be examined, and where he cannot be held for more than 24 hours. If the examining doctor concludes that detention for any longer period or treatment of the subject is required, then that doctor must notify the petitioner, who must then notify the court. The temporary detention order under Law 116 does not explicitly give police officers any discretion with regard to enforcement.[3]

On the same day that the order was issued, Jorge, along with two of Francisco's siblings (but not Celso), went to a police station to have the order enforced. The defendants were at the police station and assumed the task of enforcing the order, calling on paramedics for assistance. Later that day, the defendant police officers, the paramedics, and the three family members found Francisco at a local establishment. Francisco refused to go with the officers, stating that he was already being treated at a veteran's hospital. The officers then failed to carry out the order, despite the efforts of the family members to convince the officers that Francisco was dangerous. Before departing, the officers told the family members that they themselves should take Francisco to a veteran's hospital for treatment, which is

---

1. In view of the ambiguous wording of the plaintiffs' complaint, the district court chose to treat this section 1983 suit as one claiming a violation of due process under the Fourteenth Amendment. On appeal, neither party suggests otherwise.

2. *See* P.R. Laws Ann. tit. 24 § 6006 (Supp. 1991).

3. Defendants appear to concede the fact that carrying out the terms of such a Law 116 order is a non-discretionary obligation on the part of the police officer.

contrary to the stated procedure under Law 116.

No further legal steps were taken to obtain another detention order, although the plaintiffs and other family members assert that they made further informal requests to the police to take Francisco into custody. Francisco was ultimately never taken to a hospital for examination or treatment. On April 6, 1994, nearly three weeks after the defendants' failure to carry out the temporary detention order, the injury giving rise to this damages suit occurred. Francisco stabbed his brother Celso while Celso was at their mother's house for a visit. Celso had argued with Francisco about getting their mother some water and then stood out on a balcony; a few minutes later Francisco returned and stabbed Celso in the chest with a knife. Celso suffered injuries to his chest and to his respiratory and digestive systems.

Plaintiffs brought actions for damages under both section 1983 and Puerto Rico tort provisions. The district court granted summary judgment to defendants on the section 1983 suit and dismissed the state tort claims without prejudice.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*. *Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 24 (1st Cir.1997).

■ The essential elements of a claim under section 1983 are: First, that the defendants acted under color of state law; and second, that the defendants' conduct worked a denial of rights secured by the Constitution or by federal law. *Martínez v. Colón*, 54 F.3d 980, 984 (1st Cir.1995). To satisfy the second element, plaintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation. *See Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989). The issue of causation of damages in a section 1983 suit is based on basic no-

tions of tort causation. *See Maldonado Santiago v. Velázquez García*, 821 F.2d 822, 831 (1st Cir.1987) ("Section 1983 imposes a causation requirement similar to that of ordinary tort law."). In applying basic tort principles to the facts raised by a particular section 1983 claim, the causation requirement may be fleshed out with reference to state law tort principles. *Gutiérrez–Rodríguez*, 882 F.2d at 561.

■ As discussed in the decision below, plaintiffs cannot establish that the conduct of the defendants, in not enforcing the temporary detention order, was the legal cause of an attack occurring much later. *See Rodríguez–Cirilo v. García*, 908 F.Supp. 85, 91 (D.P.R.1995). The concept of proximate causation restricts tort liability to those whose conduct, beyond falling within the infinite causal web leading to an injury, was a legally significant cause. The passage of time can certainly reduce the legal significance of a particular contributing act. *See Restatement (Second) of Torts* § 433 (1965) (lapse of time a factor to be considered in determining whether a contributing factor is substantial).

The remoteness in time of the harm in this case precludes a finding of proximate causation. Although Francisco committed the kind of violence mentioned in the petition for a detention order, the space of over two weeks that passed after the officers' failure to detain Francisco, during which time family members did not attempt to obtain another detention order, renders his later act of violence too remote to impose liability on the officers. *Cf. Martínez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) (murder committed by parolee five months after release "too remote" a consequence to hold parole board liable under section 1983); *Restatement (Second) of Torts* § 433 (1965). Although the stabbing occurred at the address named in the original petition, and although the police officers may have had some indication that Celso would be at danger from an attack by Francisco,[4] giv-

---

**4.** It is a widely recognized tort law principle that one may be responsible for the foreseeable intervening acts of third parties. For example, the requirement of "causalidad adecuada" under Puerto Rico tort law would permit the assign-

ment of liability if the intervening third party action—that is, Francisco's stabbing—was a reasonably foreseeable consequence of the defendants' actions. *Widow of Andino v. Puerto Rico Water Resources Auth.*, 93 P.R.R. 168, 177–79

en the intervening time we cannot say that the officers' failure to enforce the order was the legal cause of the injury. *See Martinez,* 444 U.S. at 285, 100 S.Ct. at 558–59; *Restatement (Second) of Torts* § 433 cmt. f ("Experience has shown that when a great length of time has elapsed between the actor's negligence and harm to another, a great number of contributing factors may have operated, many of which may be difficult or impossible of actual proof.... [T]he effect of the actor's conduct may thus be so attenuated as to be insignificant....").

What further persuades us that the causation issue in this case is dispositive is that even if Francisco had been taken to a hospital on March 17, 1994, for examination, appellants have not shown that an examination performed on that day would have prevented the violent attack, spurred by an argument, on April 6, 1996. The temporary detention period was itself limited to a maximum of twenty-four hours. Appellants offered *no* competent evidence that could have supported a finding that an examination in Francisco's particular case would have prevented the later attack. Appellants rely on a clinical psychologist's signed statement asserting that Francisco's "personality disorder" caused the stabbing, and that, had Francisco been detained on March 17, 1994, he would have received effective treatment that would have prevented the stabbing. This statement, based solely on information collected through conversations with Francisco's relations and formed without any direct examination of either Francisco or of his medical records, is not enough to defeat defendants' motion for summary judgment and does not create a triable issue of material fact as to causation.[5] "The nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *Le-Blanc v. Great Am. Ins. Co.,* 6 F.3d 836, 842 (1st Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505,

2510–11, 91 L.Ed.2d 202 (1986)). Thus, not only do appellants run into proximate causation problems, but their case also falls short with regard to demonstrating the "but for" aspect of causation. *See Restatement (Second) of Torts,* § 432 (1965). We conclude, therefore, that defendants were properly granted summary judgment based on plaintiffs' failure to demonstrate causation under well-established tort principles.

Appellants' remaining arguments on appeal do not require lengthy treatment. First, we note that the record indicates that the appellants have failed to support, with any competent evidence, their additional assertion that there existed a conspiracy between the defendants and Francisco to violate plaintiffs' civil rights. Second, in response to appellants' claim that the district court abused its discretion in denying them an opportunity to amend their complaint after the deadline for such amendments established in the court's scheduling order, we note that even had the plaintiffs been able to amend their complaint by adding as a third defendant the supervisor of the two defendant police officers, the fundamental, insurmountable obstacle of causation would still have remained, and would still have offered a sufficient ground for summary judgment in favor of defendants.

## CONCLUSION

For the foregoing reasons the district court's grant of summary judgment to defendants is *affirmed.*

CAMPBELL, Senior Circuit Judge (concurring).

I write separately because I believe that there was sufficient evidence of causation to allow the issue to go to the jury. However, I concur with the majority's result because I do not think the police officers' conduct con-

---

(P.R.1966) (harm caused by reasonably foreseeable intervening causes, including the actions of third parties, may lead to liability).

5. This statement, as the district court notes, would probably be found unreliable and inadmissible as expert testimony under Fed.R.Evid. 702.

*García,* 908 F.Supp. at 91–92. In any event, the psychologist's broad assertion regarding causation does not create a triable issue in this case, where the defendant's case as to a lack of proximate causation is strong.

stituted a violation of the plaintiffs' constitutional due process rights.

## I. Causation

I think the record indicates the existence of a factual issue as to causation, precluding the granting of summary judgment in favor of Defendants on the ground of an absence of causation. *See Ahern v. O'Donnell*, 109 F.3d 809, 811 (1st Cir.1997) (all inferences to be made in favor of party against whom summary judgment sought).

Causation depends upon whether, assuming the police officers violated § 1983 on March 17 by not carrying out the court order directing them to take Francisco into custody for psychiatric examination, there was a sufficient causal connection between the officers' default and Francisco's stabbing of a relative two weeks later.

Causation in tort law is generally divided into two concepts: causation in fact, or actual causation, and proximate or legal causation. *See* W. Page Keeton et al., *Prosser & Keeton on Torts* §§ 41–42 (5th ed.1984). The terms for these two concepts are sometimes confused, as are the concepts themselves. Regardless of the terminology, however, there are two questions that must be answered to determine if a defendant's conduct "caused" a plaintiff's injury. The first question is whether there was in fact some causal relationship between the conduct and the outcome. The *Restatement* expresses this test as whether the defendant's conduct was a "substantial factor" in producing the harm. *Id.* The second question is whether the circumstances and causal relationship are such that the law will impose liability on the defendant. Sometimes this is expressed as a foreseeability test, *see* Keeton, *supra*, § 42, at 273. *Cf. Restatement (Second) of Torts*, § 431(b) (1965) (different terminology).

Regarding the second issue, foreseeability, that prong is plainly satisfied here. A foreseeable result of the police officers' failure to take Francisco to the psychiatrist for examination, as ordered by the court, was that he would harm someone, since the express basis of the court order was Francisco's potential dangerousness and likely eligibility for involuntary commitment in a mental health facility. The reason for the ordered psychiatric examination, as Puerto Rico's statute specifically provides, *infra*, is to determine whether a person believed to be dangerous *is* dangerous, and needs to be committed immediately in order to avoid the kind of harm Francisco later caused. While under the preliminary court order in issue Francisco could only be detained for twenty-four hours, the order directed that he be psychiatrically examined during that period and that, *within the twenty-four hours*, a report of his condition be sent to the judge and proper steps be initiated for his *involuntary* admittance should that be indicated. Thus the harm that occurred here was clearly a foreseeable result of interrupting the protective process begun by the petition and order.

Since the harm that occurred was foreseeable, the only remaining question is that of *actual* cause, i.e., whether Francisco's later assault with a knife was actually linked causally in sufficient degree to the police's failure to detain Francisco for the ordered psychiatric examination. I believe that on this record a factual issue is raised as to whether the police officers' failure to comply with the court order to detain Francisco was a "substantial factor" in bringing about the harm from Francisco's later stabbing of Celso.[6]

The order the police failed to carry out was issued under a comprehensive statutory scheme for the examination and involuntary commitment to a mental health facility of mentally ill people who are dangerous to themselves or others. In the first step of this process, any person who fears an individual may be psychologically unstable may bring that individual to the attention of a Puerto Rico court. P.R. Laws Ann. tit. 24, § 6006. This occurred here when a relative,

---

**6.** Although the majority discusses the *Restatement*'s "substantial factor" test under the rubric of proximate causation, *Rodríguez–Cirilo v. García*, at 52 (1st Cir.1997), it is perhaps more accurately described as referring to actual causation. *See* Keeton, *supra*, § 42, at 278 ("[T]he 1948 revision of the Restatement limited [the] application [of the "substantial factor" test] very definitely to cause in fact alone.") (citing, *inter alia, Restatement (Second) of Torts* § 433 (1965)).

Mr. Jorge Rodríguez–Nieves, filed a petition to the Puerto Rico court declaring that Francisco was believed dangerous, having threatened to kill someone with a sharp object such as a machete or a knife. The petition also stated that Francisco had previously been in a recognized mental institution.

The second step spelled out in the Puerto Rico statute is for a judge to decide, preliminarily, whether or not there are "reasonable grounds to believe that the patient is subject to *involuntary* admission and needs immediate hospitalization to keep him from harming himself, other persons or property." *Id.* (emphasis supplied). The judge expressly found such reasonable grounds here and issued a written order that Francisco was to be detained for twenty-four hours and examined by a psychiatrist to determine "if he should be admitted immediately and involuntarily to the psychiatric institution," as the statute provided. The order directed that an explanatory report be returned to the judge within the twenty-four hours and a resolution of provisional admittance prepared in the event continued hospitalization was required. It was the court order containing the above provisions that the police allegedly failed to carry out, with the result that Francisco was never examined by a psychiatrist and the necessary steps never taken for his involuntary hospitalization should that have been recommended by the psychiatrist.

If Francisco had been examined, the psychiatrist was under a duty, as the order and Puerto Rico law provide, to report his findings concerning Francisco's mental condition and potential dangerousness back to the court within twenty-four hours. If the court had then found by clear and convincing evidence, *see* P.R. Laws Ann. tit. 24, § 6089, that Francisco was "subject to involuntary admission," the court would have ordered him confined to a mental health facility. P.R. Laws Ann. tit. 24, § 6090. The statute provides that a person is "subject to involuntary admission" if he is mentally ill and if, because of his illness, he "may reasonably be expected to physically injure himself or any other person, or damage property." P.R. Laws Ann. tit. 24, § 4002(14)(a).

It is important to emphasize that the order here in question did not merely provide for a twenty-four hour period of detention. Rather it was based on a judge's finding of reasonable cause to believe that Francisco was a candidate for involuntary admission, i.e. confinement, in a mental health facility. The twenty-four hours' detention was merely the period within which he was to be evaluated, after which, if the initial finding was confirmed, he would be involuntarily committed for a more extended period. Under Puerto Rico law, a court's order for involuntary admission is limited, in the first instance, to a term of thirty days, but it can be followed by an additional thirty-day order. P.R. Laws Ann. tit. 24, § 6094(a). This second thirty-day period may then be supplemented by additional periods of 180 days as long as the patient "continues to be subject to involuntary admission." P.R. Laws Ann. tit. 24, § 6094(b). So in effect, once involuntarily admitted, a person may be forced to remain confined in a mental health facility indefinitely if he remains a danger to himself, others, or to property because of a mental illness.

I believe the evidence here plainly creates a jury issue as to whether Francisco would likely have been confined to a mental health facility for a sufficient period of time to render him unable to stab Celso when he did, had the police complied with the court order to detain him for a psychiatric examination. A jury could find that the police officers' failure to enforce the order was a "substantial factor" in the ensuing harm.

As noted, there is evidence that Francisco had threatened to kill with a sharp object, such as a machete or a knife, a threat followed by stabbing his brother two weeks later. The record also indicates his prior hospitalization in a mental facility, giving rise to an inference that his behavior stemmed from an underlying mental condition. Even more significantly, the record shows a judicial determination, reciting the consideration of evidence, that "the Court finds a reasonable basis to believe that [Francisco] may be subject to an involuntary admission treatment and hospitalization under the provisions of the Puerto Rico Mental Health Code." Underlying that determination necessarily

lay a finding of reasonable grounds to believe that Francisco might harm himself, other persons or property. *See* P.R. Laws Ann. tit. 24, § 6006.

The above facts more than suffice, in my view, to demonstrate a triable issue over whether, if the defendants had done their duty and brought Francisco to the psychiatrist for examination, the latter would more likely than not have found that Francisco was mentally ill and a danger to himself or to others and recommended committing him involuntarily. Had that recommendation been made, it could also be reasonably inferred that the Puerto Rico court would have implemented it pursuant to the statutory authority described above, and that Francisco, being confined, would not have been able to stab Celso two weeks later. Hence, I believe there is adequate evidence to create a factual issue for later trial over whether the police officers' default was a "substantial factor" in causing Celso's stabbing.[7]

The majority argues that no reasonable jury could find that the police officers' failure to bring Francisco to the psychiatrist actually caused Celso's injuries. They point out that two weeks elapsed between the police officers' failure to detain Francisco and the stabbing. They also insist that it is too speculative, on this record, to know whether Francisco would have been confined or treated so as not to have injured Celso when he did.

The time factor is hardly significant here. Two weeks is not a lengthy interval for present purposes; it is less than the thirty days which the court could have initially ordered him confined had the court determined, after psychiatric examination, that he was dangerous. "[W]here it is evident that the influence of the actor's negligence is still a substantial factor, mere lapse of time, no matter how long, is not sufficient to prevent it from being the legal cause of the other's harm." *Restatement (Second) of Torts*, § 433(c) cmt. f (1965). The damage from the collapse of a defective bridge is no less caused by the builder's negligence even though occurring months or years after construction.

As for the argument that it is too speculative whether Francisco would have been confined, I think, for reasons already discussed, that the present record is sufficient to raise a factual issue concerning his likely commitment that makes summary judgment inappropriate. The evidence of Francisco's mental instability and dangerousness is uncontested making it probable that he would have been committed. The Puerto Rico judge had already found that Francisco was a likely candidate for involuntary commitment—a preliminary finding, to be sure, but indicative of a factual issue in that judge's mind as to the need to commit him.

There is, in addition, the affidavit of a psychologist which, if accepted, would lend even further support to the probability of his commitment. Unfortunately, as the district court and my colleagues note, the affidavit is poorly drafted. The affidavit says only that it is the psychologist's "understanding" that Francisco has a serious personality disorder. It does say, however, that the psychologist is "of the opinion that Mr. Francisco Rodríguez–Cirilo's being temporarily detained on March 17, 1994 for the purpose [of] an examination and evaluation of his mental condition ... would have resulted in Francisco Rodríguez–Cirilo's receipt of timely and effective psychological and/or psychiatric treatment, *most likely on an in patient basis over an extended period of time*," (emphasis supplied) and expresses the opinion that such treatment would have prevented Francisco's later stabbing of Cirilo.

Given, in any case, the other uncontested factual evidence mentioned above plainly indicating Francisco's abnormality and dangerousness, I cannot doubt that *a factual issue*

---

7. My colleagues' error, as I see it, is in treating causation as a matter for their own determination now rather than recognizing that, on summary judgment, the question is simply whether, viewing everything most favorably to (here) the plaintiffs, the record indicates a disputed issue of fact. I do not see how, for that purpose, one can ignore the finding, similar to a probable cause finding, of a Puerto Rico judge, coupled with undisputed facts strongly indicating that Francisco was both mentally unbalanced and dangerous to others—the criteria for involuntary admission. From these facts a reasonable jury could infer that he would likely have been committed for several weeks or more, thus preventing any attack on Celso.

*exists* over whether Francisco would have been confined and, if so, rendered unable to have committed the assault in dispute. The very finding by the Puerto Rico court of reasonable grounds to believe that Francisco was subject to involuntary commitment suggests the existence of such a triable issue. The existence of such an issue is the *only* question at the present stage. We are not now acting as factfinders. Summary judgment is not a substitute for trial. The credible evidence here all shows that Francisco was suffering from mental instability, having been previously hospitalized and having uttered credible threats, later carried out, to stab someone to death. Hence even excluding the affidavit, the record provides a factual basis for a finding that, if detained as ordered for psychiatric examination, Francisco would, more likely than not, have been involuntarily admitted to a mental health facility, thereby preventing the later stabbing. The police officers' failure to detain Francisco could thus reasonably be found to have been a "substantial factor" in producing Celso's injuries.

## II. The Due Process Claim

Despite my disagreement with the majority on causation, I concur in the result because, like the district court, I do not believe that the plaintiffs have stated a violation of the Due Process Clause of the federal constitution.[8]

Plaintiffs' due process claim does not rest, of course, on any contention that the police or other agents of the state attacked or physically harmed Celso. This case is not about violence committed by agents of the state. Rather, Plaintiffs' claim concerns the all too common situation where violence inflicted by a third party might have been prevented had the police or other public officials acted more diligently. But while police default may be found to have caused Celso to lose the protection of a state statutory scheme designed to guard the public against people having Francisco's potential for violence, this unfortunate failure does not violate the federal constitution. As the Supreme Court wrote:

> But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago County Dep't. of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). *See also Estate of Gilmore v. Buckley*, 787 F.2d 714 (1st Cir.) (holding that a county was not liable under the Due Process Clause for the death of a woman murdered by a prison inmate while he was on a furlough release, even though the county had reason to know that the victim was in special danger from the murderer), *cert. denied*, 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986).

Nor does the fact that the police violated the plain order of a Puerto Rico court to detain Francisco and bring him to a psychiatrist for examination change the analysis. Police officers certainly have a duty to obey court orders. But the court did not, in ordering Francisco's detention, thereby create the sort of "special relationship" between the state and all of Francisco's potential victims that might make the state liable for any harm that came to them at Francisco's hands. *See generally DeShaney*, 489 U.S. at 198–203, 109 S.Ct. at 1004–07 (discussing the "special relationship" test). Neither did the state render Celso more vulnerable to the danger posed by Francisco. *See id.* at 201, 109 S.Ct. at 1006. By failing to detain him for examination, the defendants merely failed to reduce a danger—not of the state's own making—that Francisco's violent proclivities already created.

The police officers in this case may have acted improperly. Faced with a court order

8. The Fourteenth Amendment states, in relevant part, "[N]or shall any State deprive any person of life, liberty, or property, without *due process of law.* . . . ."

to detain Francisco, they should not have substituted their judgment for the court's and refused to detain him in violation of the court's order. As discussed above, a jury could reasonably find that their wrongful failure to enforce the court's order was a substantial factor in causing Celso's injury by Francisco. Their default might constitute a tort under state law. *See Restatement (Second) of Torts* § 323 (1965) (stating that one who undertakes to render services to another may be liable for performing negligently). But "the Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation." *DeShaney*, 489 U.S. at 202, 109 S.Ct. at 1006. If the defendants' conduct here violated the Due Process Clause, then many everyday defaults of police, firefighters, and other public officials around the nation would likewise violate the Constitution on a similar theory. It will be unfortunate, I believe, if, instead of relying on state legislatures and state courts to provide legal means to redress matters of this nature, federal courts transform conduct that is at most tortious into constitutional causes of action.

I would affirm the decision of the district court because the plaintiffs have no cause of action under 42 U.S.C. § 1983 and the Due Process Clause.