# United States Court of Appeals

## For the First Circuit

No. 10-1714

DONNA COSCIA, ADMINISTRATRIX OF THE ESTATE OF JASON COSCIA,
PLYMOUTH PROBATE COURT DOCKET #08P-0409AD1,

Plaintiff, Appellee,

v.

TOWN OF PEMBROKE, MASSACHUSETTS, ET AL.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter, Associate Justice,[*]
and Selya, Circuit Judge.

Joseph L. Tehan, Jr., with whom Katharine I. Doyle and
Kopelman and Paige, P.C., were on brief, for appellants.
Albert L. Farrah, with whom Karl F. Stammen, II, and Stammen
& Associates, were on brief, for appellee.

September 14, 2011

---

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER**, **Associate Justice**.  In her capacity as Administratrix of the estate of her son, Jason Coscia, the plaintiff, Donna Coscia, has claimed violations of Fourteenth Amendment due process in a suit for damages under 42 U.S.C. § 1983 (2006) against a number of Pembroke, Massachusetts police officers, their superiors, and the town, for failing to prevent Jason Coscia's death.  The nub of her case is the charge that they failed to provide medical services for the decedent who threatened suicide in police custody, as an alleged consequence of which he killed himself some fourteen hours after release.  This appeal in advance of trial is brought by the individual defendants, who moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on grounds including qualified immunity, see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1946 (2009), and the issue is the sufficiency of the complaint to state a due process claim resting on law established with sufficient clarity to apprise the defendants of the duty they are said to have breached.  We hold that the complaint failed to allege a constitutional violation and reverse the district court's ruling sustaining the claim.

On this de novo review of a purely legal issue, see Estate of Bennett v. Wainwright, 548 F.3d 155, 163 (1st Cir. 2008), the governing allegations of the complaint can be stated shortly. After twenty-one-year-old Jason Coscia had a one-car accident, he was arrested about eleven o'clock in the morning and brought to the

Pembroke police station.  On the way there he said he intended to throw himself in front of a train, and he continued to utter suicide threats at the station house accompanied by self-destructive behavior, to the point of licking an electrical outlet.  As a consequence, the police did not lock him in a cell, but placed him in leg restraints and followed an evaluation protocol that showed a high suicide risk.  He was not examined by a doctor, but was released on his own recognizance about six o'clock that evening.[1]  Just before eight o'clock the next morning he committed suicide by stepping in front of a train.  The complaint claims that "[t]he failure of the defendants to take appropriate action to have Jason Coscia evaluated by medical professionals caused his death by suicide."[2]

A defense motion for judgment on grounds of qualified immunity raises issues about the recognition of the constitutional right said to have been violated, and the requisite clarity by which it is established in the law.  Failing either of them, dismissal follows, Pearson v. Callahan, 555 U.S. 223 (2009);

---

[1]Although it is irrelevant to the decision of the case, it is fair to note that the transcript of the hearing on the motion to dismiss shows that the police released him in the company of a friend.

[2]Given our conclusion that no claim is stated against the individual officers involved, there is no need to summarize allegations claiming that supervisory failures led to the violations claimed, or that a municipal policy of constitutionally inadequate treatment made the town liable as well.

failing both, a court dismissing the action has discretion to choose either issue as cause for the disposition, see id. at 236. The trial court held against the defendants on both points, of course, but we decide the appeal on the ground that the complaint fails to allege a due process violation.[3] The question is thus whether the allegations as considered most favorably to the plaintiff "raise a right to relief above the speculative level on the assumption that [those] allegations are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A state and its subdivisions are under a substantive obligation imposed by the Due Process Clause of the Fourteenth Amendment to refrain at least from treating a pretrial detainee with deliberate indifference to a substantial risk of serious harm to health. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); see Farmer v. Brennan, 511 U.S. 825, 835 (1994) (standard of deliberate indifference except as to excessive force claims). Proof of deliberate indifference requires a showing of greater culpability than negligence but less than a purpose to do harm, Farmer, 511 U.S. at 835, and it may consist of showing a conscious failure to provide medical services where they would be reasonably appropriate, Estelle v. Gamble, 429 U.S. 97, 104 (1976).

With these general legal premises to start with, the

---

[3]Since the motion was filed under Federal Rule of Civil Procedure 12(c), not 12(b)(6), all pleadings may be considered, but here it suffices to analyze the complaint.

-4-

argument that the complaint fails to state a claim for relief turns on the allegation that Jason Coscia killed himself, not while in custody, but some fourteen hours after his release.[4] Like the district judge, we have been apprised of no case recognizing due process liability for suicide based on police conduct except for death during custody, and the defendants have cited one case comparable to this one that found no liability for the reason that the suicide occurred after release. The district court nonetheless decided that a liability claim had been pleaded adequately despite the non-custodial death because a causal relationship (in fact and law) had been plausibly stated between the failure to furnish medical care during the temporary custody and the self-destructive act the next morning:

> [T]he plaintiff's theory depends on whether the officers violated Coscia's rights by failing to offer medical care *during his custody* and whether these actions caused his suicide. . . . [T]raditional causation principles provide the appropriate limits on a government official's liability for harms that occur after a detainee has left the official's custody.

Coscia v. Town of Pembroke, 715 F. Supp. 2d 212, 223, 226 (D. Mass. 2010).

---

[4]Thus, we express no opinion on the sufficiency of the complaint to charge that the conduct of the police during custody was deliberately indifferent to the risk of harm or death during that period; it is unnecessary to deal with this question.

We assume that the District Court was correct that the familiar principles of tort causation requiring connection in fact would be satisfied by the complaint here. It is plausible for pleading purposes that medical intervention during the seven-hour custody (say, by administering psychotropic medication to relieve suicidal anxiety, or by observation and care in a hospital) could have deflected the decedent from the course leading to the suicidal act fourteen hours after custody ended. Hence, we can accept the allegations as claiming causation in fact of foreseeable harm. See Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997). But although principles of liability under Section 1983 borrow from the understanding of tort causation, Garcia, 115 F.3d at 52, we think the rationale for official responsibility under the Due Process Clause requires a limit on liability that stops short of the point that may be reached by fact causation analysis, and this accounts for our disagreement with the district court.

In setting out our reasons, it is well to keep in mind that we are not dealing with an allegation of harm from a risk created by the state itself or by its local officers. See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 201 (1989). We agree with the district judge that the pleadings raise no claim that the treatment by the police gave rise to a suicidal inclination on the decedent's part when he would otherwise have had none, and nothing in the complaint suggests even in a conclusory way that his

-6-

self-destructive tendency was intensified by state action, or that anything done or omitted by the police weakened any instinct for self-preservation and made him more dangerous to himself. The causation alleged is not that the absence of medical attention during custody was in any way creative of suicidal vulnerability by working a change in him for the worse, but consists rather of a failure to prevent the consequence of his preexisting suicidal disposition, a failure to intervene in a way that would change him, or his circumstances, for the better in the period after his release. We think this claim of causation leads to a liability beyond what due process imposes, for although the existing law does recognize a custodial duty to take some preventive action, its rationale does not extend official protective responsibility as far as the plaintiff would take it.

In DeShaney v. Winnebago County Department of Social Services, the Supreme Court pointed to the limit of the government's due process obligation to prevent harm to individuals, reiterating the reasoning behind Estelle's recognition of an obligation to provide medical care to prisoners (hence, City of Revere's due process rule for detainees). The official responsibility rests on the fact of custody, "because the prisoner is unable by reason of the deprivation of his liberty [to] care for himself," DeShaney, 489 U.S. at 198-99 (alteration in original)(internal quotation marks omitted). "An inmate must rely on prison authorities to meet his

medical needs; if the authorities fail to do so, those needs will not be met." Estelle, 429 U.S. at 103, quoted in DeShaney, 489 U.S. at 200. The government's obligation to prevent avoidable harm by providing medical care during custody is, in other words, a substitute for the responsibility that a reasonable person would bear for himself, if he were not detained. But a substitute duty that obligates the government while a person in custody "must rely" on those who control him does not support liability for harm occurring after release when the individual is no longer forced to rely on authorities who limit action on his own behalf or intervention by others on the outside that would avoid harm.[5]

And because it is substantive due process that must account for any requirement that the government answer for harm that is avoidable after the official restriction has ceased, see DeShaney, 489 U.S. at 199-200, such liability could be recognized only if it would be fundamentally or shockingly unreasonable for the authorities to disclaim, and be left by state law without, responsibility for whatever may befall an erstwhile detainee once he again is free from restrictions on acting effectively for himself, or from benefitting from help that others may provide. We think that no such argument could seriously be made, and no such

---

[5]Of course, ministrations during custody might change an individual permanently for the better, so that when a detainee's release leaves him free from the government's limits on his liberty he will actually have no need for medical services. But, for the reasons set out, that is incidental to due process.

conclusion is entailed by existing law. With the restoration of the detainee's liberty, then, the legal chain of preventive (as distinct from state-created) causation must be taken to have ended. We accordingly hold that in the absence of a risk of harm created or intensified by state action there is no due process liability for harm suffered by a prior detainee after release from custody in circumstances that do not effectively extend any state impediment to exercising self-help or to receiving whatever aid by others may normally be available.[6]

That rule requires the dismissal of this complaint. As mentioned, there is no claim here of a state-created or augmented risk, and fourteen hours at liberty is not reasonably compatible with any claim that normal sources of support were effectively blocked. So far as it appears from the complaint, when the police released the decedent they "placed him in no worse position than that in which he would have been had they not acted at all . . . ." DeShaney, 489 U.S. at 201. When he was arrested, he was thinking about suicide, though not at that point actually attempting it, and the pleadings are fairly read to allege the same at the time of release. While we recognize the possibility that state tort law may bind the police to a more demanding standard of conduct and a more

---

[6]Given the requirement of effective opportunity to take action or to be open to action by others, there is no reason to fear a perverse incentive for the police to avoid liability by releasing an individual attempting suicide.

extended period of liability than the Due Process Clause's limitations on state authority (and the town's regulations may do the same), there are no state law claims before us.

**<u>Reversed</u>**.