Jose F. DEODATTI COLON,
et al., Plaintiffs,

v.

Wilson ROSADO RIVERA,
et al., Defendants.

Civ. No. 90–1675 GG.

United States District Court,
D. Puerto Rico.

Dec. 15, 1993.

---

Juan R. Acevedo Cruz, Hato Rey, PR, for plaintiff.

Mabel Roman Millan, Federal Litigation Div. Dept. of Justice, San Juan, PR, Jose L. Gandara, Bauza & Davila, Old San Juan, PR, for defendant.

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

This is a civil rights action under 42 U.S.C. §§ 1983, 1985, and 1988, and 28 U.S.C. § 1343, for the alleged deprivation of plaintiff of federal rights by defendants. Plaintiff José Deodatti Colón (hereinafter referred to as "plaintiff" or "Deodatti") has also invoked pendent jurisdiction in order to claim compensatory and punitive damages for the alleged violation of his state civil rights by the defendants. Appearing as co-plaintiffs are his parents Roberto Deodatti Fraticelli and María Colón Torres, who appear in their personal capacity, and jointly as the conjugal partnership comprised by them and in representation of their minor son. Also included as co-plaintiffs are José Deodatti's grandparents, Armando Colón Lespier and Miguelina Montañez Rivera. Co-defendants municipal policeman Wilson Rosado Rivera ("Rosado"), Domingo Aponte García ("Aponte") and José Enrique Sánchez González ("Sánchez") are sued in their personal capacity. They are police officers with the Ponce Municipal Guard. Co-defendant Carlos Rodríguez Rivera ("Rodríguez or Commissioner") is sued in his personal capacity and as Commissioner of the Ponce Municipal Guard. Rafael Cordero Santiago ("Cordero" or "Mayor") is sued in his personal capacity and as Mayor of the city of Ponce. The City of Ponce is also included as a co-defendant.

Pending before us are motions for summary judgment filed by co-defendants Sánchez, Aponte, Rosado, the Mayor and the Commissioner, as well as by the city of Ponce. Supplementary motions for summary judgment were filed by defendants raising the defense of qualified immunity. All of the aforementioned motions were opposed by plaintiffs. The magistrate, in his Report and Recommendation, recommended that the summary judgment motions be granted in favor of defendants and that the pendent state claims be dismissed. Plaintiffs have objected.

## I. BACKGROUND

Plaintiffs filed this civil rights action after Deodatti was injured by a gunshot in his right leg while being pursued by Rosado, a police officer with the Municipal Guard. It is undisputed that on May 20, 1989 co-defendants Rosadó and Aponte were patrolling the Ponce area when they received a radio call informing that a suspect had been seen breaking and entering a residence located on the second floor of a supermarket in Villa Grillasca, Ponce. They responded to the call, arriving at the same time as co-defendant Sánchez.

There is a factual dispute as to what happened next. Co-defendants allege that when they arrived at the scene they observed a young man (Deodatti) running down the stairs from the residence that had been reported as burglarized. They ordered him to stop, but he started to run away. Aponte stayed near the supermarket while Rosado ran after the suspect. Deodatti jumped a fence, entering the backyard of another residence. When the suspect jumped a second fence, he was twice ordered to stop.

Rosado claims that Deodatti introduced his right hand inside his pocket and walked towards him in a menacing manner, refusing to stop when ordered to do so and confronted Rosado while pointing at him a shiny object. Rosado feared for his life and fired his gun at Deodatti, misfiring the first time and hitting plaintiff in one of his legs with the purpose of thwarting the attack. After Deodatti fell, Rosado found the shiny object, a screwdriver located beside plaintiff. Rosado gave Deodatti first aid, setting a tourniquet. Rosado then waited for an ambulance that had been called.

Not surprisingly, plaintiffs' version of the facts is quite different. They claim that on the date in question, Deodatti was standing in front of the supermarket in Villa Grillasca when two police patrol cars arrived. The officers questioned Deodatti in a menacing fashion as to what was he doing there. Deo-

datti became scared and ran away. Co-defendant Aponte remained at the supermarket, while Rosado ran after Deodatti. Deodatti then turned a corner and was met by another police officer, Sánchez, who ordered him to stop. Plaintiffs allege that Deodatti then stopped, but started running away again when Rosado told Sánchez that Deodatti was armed. Plaintiffs then claim that Sánchez shot Deodatti with a shotgun, but misfired. Because he was scared, Deodatti jumped a fence to run away. Rosado continued the chase and stopped Deodatti by shooting him in the back of his left leg. The police officers then filed a criminal complaint against Deodatti, which was ultimately dismissed.

Although the actions of both Deodatti and the police officers after Deodatti fled the scene are the subject of a factual dispute, we do not have to resolve said dispute. The significant fact for this summary judgment motion is that for unknown reasons, Deodatti did flee the scene when he saw the police officers and they chased him. There is no dispute on this point.

## II. SUMMARY JUDGMENT STANDARD

The decision whether or not to grant summary judgment depends as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

■ Summary judgment is an appropriate remedy "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c); *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989). Not all conflicts of fact will bar summary judgment. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby*, 477 U.S. at 247–248,

106 S.Ct. at 2510 (emphasis in original); *see also Medina Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 7–8 (1st Cir.1990). A fact is material only if it affects the outcome of the suit. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

The nonmoving party bears the burden of production of showing that summary judgment is not appropriate by coming forward with specific facts showing that there is a genuine issue for trial, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *R.J. Reynolds*, 896 F.2d at 8.

■ In deciding whether summary judgment is proper, the court must view the record in the light most favorable to the party opposing such motion, and indulge all inferences favorable to the party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Amsden v. Moran*, 904 F.2d 748, 752 (1st Cir.1990). A nonmoving party's evidence cannot be merely colorable, but must be significantly probative to show differing versions of the facts which justify a trial, *R.J. Reynolds*, 896 F.2d at 8, 10. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *R.J. Reynolds*, 896 F.2d at 8.

## III. QUALIFIED IMMUNITY

The Supreme Court established in *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982), that "[t]hrough the medium of qualified immunity, the law strives to balance its desire to compensate those with rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be un-

bearably disruptive." *Buenrostro v. Collazo,* 973 F.2d 39, 43 (1st Cir.1992).

The question before us is whether the motion for summary judgment on the grounds of qualified immunity should be granted in favor of defendants. The general rule is that the defense of qualified immunity shields government officials performing discretionary functions from liability for damages in civil suits, "insofar as their conduct does not violate clearly established statutory or constitutional rights of a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity "gives ample room for mistaken judgments" and shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

In applying this standard to arrests made by the police, the First Circuit Court of Appeals has established that an arrest challenged because the officers lacked probable cause, said probable cause was deemed "objectively reasonable" unless "there clearly was no probable cause at the time the arrest was made." *Topp v. Wolkowski,* 994 F.2d 45, 50 (1st Cir.1993); *citing Floyd v. Farrell,* 765 F.2d 1, 5 (1st Cir.1985). The officers are thus protected by qualified immunity "so long as the presence of probable cause is at least arguable." *Rivera v. Murphy,* 979 F.2d 259, 263 (1st Cir.1992). The law provides qualified immunity to government officials because "officials should not err always on the side of caution" out of fear of a lawsuit. *Davis v. Scherer,* 468 U.S. 183, 196, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984).

■ Given the undisputed facts in the instant action, it is clear that there was reasonable grounds to arrest plaintiff, and that therefore the defense of qualified immunity bars an action for false arrest. "In a false arrest case, the question normally is whether the arresting officer could reasonably believe that the information he or she possessed constituted probable cause." *Lallemand v. University of Rhode Island,* 9 F.3d 214, 215 (1st Cir. November 22, 1993). We find here that the arresting officers had reasonable grounds for their actions, mainly plaintiff's flight, and thereby grant defendants' motion for summary judgment on this ground.

## IV. LEGAL ANALYSIS: LIABILITY UNDER 42 U.S.C. § 1983

Pursuant to Fed.R.Civ.Proc. 56(c), we review the record in the most favorable light to the party opposing summary judgment and indulge all reasonable inferences favorable to them. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Amsden v. Moran,* 904 F.2d 748, 752 (1st Cir.1990). Plaintiffs main allegations are the following:

(1) Deodatti's constitutional rights were violated when Rosado, a police officer with the municipal guard, unlawfully shot him in the leg; and conspired with two other municipal guards, Aponte and Sánchez to falsely portray to the government authorities that Deodatti had assaulted Rosado with a screwdriver and had to defend himself with his revolver.

(2) The Commissioner and the Mayor failed to properly train and supervise the other co-defendants, regarding the use of the service revolver and their reckless or callous indifference caused the injuries sustained by Deodatti.

(3) Rosado, Aponte and Sánchez, the three municipal guards assaulted and battered Deodatti, causing him damages.

(4) Rosado, Aponte and Sánchez maliciously initiated a criminal complaint against Deodatti, in order to intimidate plaintiffs from assert their rights against Rosado.

(5) There is a cause of action on behalf of Deodatti, his parents and his grandparents, under the laws of the Commonwealth of Puerto Rico, to recover damages for the injuries, pain and suffering resulting from defendants' violation of Deodatti's constitutional rights.

The crux of Deodatti's case is his contention that Rosado, Sánchez and Aponte lacked

probable cause to arrest him and used undue force in doing so. In determining whether to impose liability under § 1983, two elements must be considered. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who deprived him of that right acted under state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Additionally, the conduct complained of must have been causally connected to the deprivation in question. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989); *citing Woodley v. Nantucket*, 645 F.Supp. 1365, 1369 n. 4 (D.Mass.1986). Because the defendants do not deny that they were acting under color of law, we must now determine whether plaintiffs have set forth "sufficient evidence to establish both a constitutional deprivation and a causal connection between defendants' conduct and the deprivation." *Gutierrez*, 882 F.2d at 559.

■ As expressed before, this evidence must be significantly probative to show differing versions of the facts which justify a trial, "... not merely conclusory allegations, improbable inferences or unsupported speculation." *R.J. Reynolds*, 896 F.2d at 8, 10. In order to strip the co-defendants of the qualified immunity defense that shields the co-defendants from liability, Deodatti must show that co-defendants' conduct reflected a reckless and callous indifference to his constitutional rights. *Gutierrez*, 882 F.2d at 559; *citing Germany v. Vance*, 868 F.2d 9, 18 (1st Cir.1989); *See also Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir.1991) (The "deliberate indifference" standard means more than "simple negligence.").

## A. Individual Officers' Liability

### 1. Deodatti's injuries during the arrest.

■ In their motion for summary judgment, Rosado, Aponte and Sánchez argue that the evidence presented by plaintiffs is not enough to establish "that co-defendants' conduct reflected a reckless and callous indifference to [Deodatti's] constitutional rights." *Gutierrez*, 882 F.2d at 559; *citing Germany v. Vance*, 868 F.2d 9, 18 (1st Cir.1989). Plaintiffs' bare, conclusory allegations do not

pass muster as to the summary judgment standard. They did not even file affidavits to rebut the sworn statements submitted by the co-defendants. As expressed by the magistrate in his Report and Recommendation, "[n]one of the documents filed by plaintiff[s] contain definite, competent evidence to rebut defendant's Rosado's version of the facts." They did not rebut co-defendants' evidence that Rosado, Sánchez and Aponte are trained police officers with years of experience and did not present any evidence of any records of previous civilian complaints against the officers.

There is no dispute to the fact that Rosado shot Deodatti in his left leg. However, the co-defendants Rosado, Sánchez and Aponte submitted sworn statements to the effect that Rosado fired his gun against Deodatti in self-defense, while pursuing him as a burglary suspect. The officers were in full uniform and their authority was apparent. Thus, they are shielded by qualified immunity. Without evidence to the contrary, only plaintiffs' general and bare allegations, we find that as to this claim, defendant's motion for summary judgment must be granted.

### 2. Conspiracy to bring criminal charges against Deodatti.

Plaintiffs also allege that Rosado, Sánchez and Aponte conspired to: (1) falsely misrepresent to the authorities that the shooting was in self-defense; and (2) maliciously initiated a criminal complaint against Deodatti.

■ Any allegation of conspiracy must be supported by material facts, and not merely be conclusory allegations. *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir.1980). A plaintiff pursuing a cause of action alleging conspiracy, must document with some degree of particularity, defendants' agreement to commit an illegal act. These allegations must at least allow us to infer that defendants plotted against plaintiff by reaching an understanding to bring about the conspiracy's objectives. *Schneider v. Colegio de Abogados de Puerto Rico*, 546 F.Supp. 1251, 1263 (D.P.R.1982). As to these requirements, plaintiffs have failed miserably. The contrary, the pattern of bare, conclusory allega-

tions set forth without any evidence to support them, still continues. Plaintiffs have not adequately plead their conspiracy claim and have not presented any evidence to show that said conspiracy took place.

Because no genuine issue of fact exists as to the absence of an alleged conspiracy, summary judgment in favor of the defendants must be granted as to this claim.

### B. Supervisory Liability

#### 1. Commissioner Carlos Rodriguez

Plaintiffs also allege that the Commissioner failed to properly train and supervise the officers regarding the proper and lawful use of an officer's gun, in reckless and callous indifference of Deodatti's constitutional rights.

In the context of supervisory liability, the First Circuit Court of Appeals has established that "liability may not be predicated upon a theory of *respondeat superior.*" *Gutierrez–Rodríguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir.1989) (Citations omitted.) A supervisor "may be found liable only on the basis of [his] own acts or omissions." *Gutierrez–Rodríguez v. Cartagena*, 882 F.2d 553 at 562; *citing Figueroa v. Aponte–Roque*, 864 F.2d 947, 953 (1st Cir.1989). Plaintiffs must show that the supervisor's conduct or inaction amounted to a "reckless or callous indifference to the constitutional rights of others." *Germany v. Vance*, 868 F.2d at 17–18. And finally, there must be "an affirmative link between the street-level misconduct and the action, or inaction, of supervisory officials." *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *cited in Gutierrez*, 882 F.2d at 562. Furthermore, the First Circuit in *Gutierrez, supra,* determined that there is no difference between the "gross negligence standard amounting to deliberate indifference" and one of reckless and callous indifference. *See Lipsett v. University of Puerto Rico*, 864 F.2d 881, 902 (1st Cir.1988).

 Plaintiffs have not supported their allegations that the Commissioner acted intentionally or with reckless and callous indifference. No affidavits or any prior civilian complaints against the officers were prof-

fered. Nor did plaintiffs submit any document to demonstrate that Rosado, Aponte or Sánchez were "prone to misconduct" or representing an unusually serious risk, and that the Commissioner knowingly or recklessly neglected to act upon this. A mere allegation that supervisory officials are liable is a legal conclusion, and as such must be buttressed with some colorable evidence in order to survive a motion for summary judgment. Since there is no genuine dispute as to any material fact, we must find Commissioner Carlos Rodríguez not liable to plaintiffs.

#### 2. The Municipality of Ponce and Mayor Rafael Cordero

Plaintiff claims that the Mayor and the Municipality of Ponce also failed to properly train and supervise the officers regarding the proper and lawful use of an officer's gun, in reckless and callous indifference of Deodatti's constitutional rights. This failure to train is alleged to be the proximate cause of Deodatti's injuries.

 The Supreme Court, in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), established that a municipality cannot be held liable under § 1983 under the *respondeat superior* doctrine. *See also Manarite v. Springfield*, 957 F.2d 953, 956 (1st Cir.), cert. den. —— U.S. ——, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992). A municipality will only be held liable when a municipal policy or custom causes the alleged constitutional deprivation. *Id.* at 956. Only when the municipality deliberately or recklessly fails to train an officer will it be liable for such failure under § 1983. Plaintiffs must demonstrate the existence of a policy or custom and allege a causal link between that policy and the constitutional violation. *Manarite*, 957 F.2d at 959. In this case, the plaintiffs have not shown that the Municipality's failure to train its officers was the cause of Deodatti's injuries, and thus, summary judgment must be granted as to these claims.

### V. PENDENT STATE CLAIMS

When summary judgment is granted under § 1983, it is not proper to grant summary

judgment on the pendent state claims. Instead, we are directed to dismiss without prejudice said claims over which we no longer have jurisdiction, thus allowing the plaintiffs to file their cause of action in the state courts. *Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir.1992); *citing Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1987). Therefore, the pendent state claims must be dismissed without prejudice.

## VI. CONCLUSION

**WHEREFORE,** for the reasons stated above, the motions for summary judgment filed by co-defendants Wilson Rosado Rivera, Domingo Aponte García, José Enrique Sánchez González, Carlos Rodríguez Rivera (Commissioner of the Ponce Municipal Guard), Rafael Cordero Santiago (Mayor of Ponce) and the Municipality of Ponce are hereby **GRANTED** as to the federal claims. Plaintiffs' pendent state claims are hereby **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**SO ORDERED.**