**Carmen MILLER, et al., Plaintiffs,**

v.

**KENNEBEC COUNTY,
et al., Defendants.**

**No. CIV. 98–0078–B.**

United States District Court,
D. Maine.

Aug. 30, 1999.

Dale Thistle, Newport, ME, for Plaintiff.

William Fisher, Portland, ME, for Kennebec Defendants.

Edward Benjamin, Jr., Portland, ME, for Rockport Defendants.

## ORDER AND MEMORANDUM
## OF DECISION

BRODY, District Judge.

This civil rights action arises out of the arrest and subsequent incarceration of Plaintiff Carmen Miller ("Ms. Miller") in connection with an outstanding warrant for failure to appear and failure to pay a fine. Defendants are the Town of Rockport and Rockport Police Officer Brent Davis; Kennebec County, Kennebec County Sheriff Bryan T. Lamoreau, and Jane Doe of Ken-

nebec County; and Knox County, Knox County Sheriff Daniel G. Davey, and Knox County Corrections Officer Jeffrey Fuller ("Defendants"). Ms. Miller and her husband, Lawrence Miller ("Plaintiffs"), allege generally that her arrest and imprisonment violated the Fourth, Fifth, Eighth and Fourteenth Amendments of the Constitution as well as various provisions of state tort law.[1] Plaintiffs seek compensation for pain and suffering, emotional distress, medical expenses, lost wages, and loss of consortium, as well as punitive damages and attorney's fees. Before the Court are two motions for summary judgment: one submitted by Davis and Rockport, the other filed on behalf of all other defendants. For the reasons discussed below, both Motions for Summary Judgment are GRANTED.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A

material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). For the purposes of summary judgment, the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

## II. BACKGROUND

On April 13, 1996, the Saturday of the Patriot's Day long weekend, Ms. Miller was operating a motor vehicle with an expired inspection sticker on Route 90 in Rockport, Maine. She was stopped by Rockport Police Officer Brent Davis ("Davis") at 1:19 P.M. Davis radioed Rockport dispatch and requested that it run a check on Ms. Miller for outstanding warrants. According to the teletype printout for the Maine Wanted list received by Rockport Dispatcher Jessika Tassinari ("Tassinari"), Ms. Miller had an outstanding arrest warrant in Kennebec County arising out of her failure to appear in court and failure to pay a fine.[2] In a telephone

---

1. Plaintiffs' seven-count Complaint is not a model pleading. As far as the Court can determine, it asserts the following claims: (1) negligence on the part of Davis, Lamoreau, Fuller, and Jane Doe (Count 1); (2) municipal liability on the part of Kennebec County, Knox County, and the Town of Rockport pursuant to 42 U.S.C. § 1983 (Count II); (3) violations by all Defendants of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983 (Count III); (4) intentional infliction of emotional distress by all Defendants (Count IV); (5) negligent infliction of emotional distress by all Defendants (Count V); (6) loss of consortium (Count VI); and (7) a violation by all Defendants of the Maine Civil Rights Act, Me.Rev.Stat. Ann. title 5, § 4681 (Count VII).

 The Court notes in passing that while the Plaintiffs' Complaint refers to the "City of Rockport," Rockport is apparently a town. (Davis & Rockport Mot. Summ. J. Ex. G.)

2. In 1988, Ms. Miller was convicted of operating under the influence and was ordered to pay a fine of $350.00 within 90 days of the date of her sentencing. As of May 18, 1994, Ms. Miller had failed to pay some $235 of that fine. On that date, Kennebec County Superior Court issued a Motion and Order to Appear, a copy of which was sent to Ms. Miller by regular mail. Ms. Miller claims that she never received this order and that it was returned to the Kennebec County Superior Court and is currently in her file. In any event, Ms. Miller failed to appear at the June 1994 hearing as directed by the Order and a warrant for her arrest was issued on September 13, 1994.

 On March 24, 1995, the Kennebec County Superior Court issued a second Motion and Order to Appear ordering Ms. Miller to appear in court on April 25, 1995. Ms. Miller paid the outstanding balance of the fine on April 20, 1995. The Kennebec County Supe-

conversation with Tassinari, Kennebec County Dispatcher Kenneth Hatch ("Hatch") confirmed the existence of the warrant and advised her that a notation on the top of the warrant indicated that it was to be executed "by bringing the defendant immediately before a sitting judge."[3] Hatch told Tassinari that this notation meant that the person named in the warrant was subject to arrest Monday through Friday during the day.

Tassinari advised Davis by radio of the outstanding warrant and told him that the warrant required that Ms. Miller be taken "before a judge immediately," and that it specified $235 cash bail.[4] Davis acknowledged receipt of Tassinari's message and told her that he was taking Ms. Miller to the Knox County jail and that she should request Kennebec County to fax written confirmation of the outstanding warrant to that facility.

After speaking with Tassinari, Davis informed Ms. Miller that she was under arrest for an unpaid fine. Davis directed Ms. Miller to park her car in a nearby parking lot, then placed her, unhandcuffed, in the back seat of the police car. Davis seated Ms. Miller's passenger, a young girl, in the front seat of the police car and proceeded to Ms. Miller's residence where he dropped the child off with Ms. Miller's husband, Lawrence Miller ("Mr. Miller").

Davis told Mr. Miller that his wife's arrest was based on an outstanding Superior Court warrant for failure to pay a fine. Mr. Miller told Davis that the fine had been paid and that he had the canceled check to prove it. Davis did not wait for Mr. Miller to produce the canceled check, but instead transported Ms. Miller to the Knox County Jail.

Since the Town of Rockport ("Rockport") has no jail facilities of its own, persons arrested by Rockport police officers are held at the Knox County jail. Davis claims that bail is handled by the Knox County Sheriff's Office. Plaintiffs dispute this and contend that bail is handled by a Bail Commissioner or by the Court.

Upon arriving at the Knox County Jail, Davis had two conversations with Kennebec County Dispatcher Hatch. In the first conversation, Hatch told Davis that the warrant could be executed only on Monday through Friday during the day and that the subject must be brought before a sitting judge. Hatch admitted, however, that he was unfamiliar with this type of warrant and did not know its purpose. Hatch then consulted fellow dispatcher Mark Graham ("Graham") who said that in his one experience with this type of warrant, law enforcement waited to arrest the person during the week.[5] Davis told Keith

rior Clerk's Office, however, failed to recall the warrant. Thus, as of April 13, 1996, there existed a facially valid warrant for Ms. Miller's arrest.

Nancy Desjardins, Clerk of the Kennebec County Superior Court, was named as a defendant in this case. By order dated June 22, 1998, the Court granted Desjardins unopposed Motion for Summary Judgment.

3. The words "this warrant to be executed by bringing defendant immediately before a sitting judge" do, in fact, appear in capital letters and bold type across the top of the warrant. The body of the warrant directs law enforcement to "arrest said defendant and bring her before the court, forthwith at Kennebec County, so that s/he may show cause why s/he should not be sentenced to be imprisoned for nonpayment." The bottom of the warrant contains the following notation with respect to bail: "$235 cash only, (defen-

dant to contact court.)" (Statement of Material Facts in Support of Mot. Summ. J. by Knox and Kennebec County Defs. Ex. A–2.)

4. Plaintiff claims that Tassarini told Davis exactly what Hatch told her, that is, that the warrant could be executed only during the day on Monday through Friday. The transcript of the conversation between Tassarini and Davis reveals, however, that Tassarini relayed to Davis only that "according to the paperwork at Kennebec, as soon as that paperwork is served the subject needs to be brought before a Judge immediately." (Pls.' Resp. Ex. C at call 1.)

5. Kennebec County Sheriff Bryan T. Lamoreau ("Lamoreau") was the sheriff of Kennebec County at all times relevant to these events. Lamoreau has at least some responsibilities with respect to the training of dis-

that he was considering contacting a Bail Commissioner to get further guidance.

During his second call to Hatch, Davis asked for and was given contact numbers for several on-duty assistant district attorneys in Kennebec County. Davis then phoned Kennebec County Assistant District Attorney James Mitchell ("ADA Mitchell"), who advised Davis that Ms. Miller should remain in custody until a judge was available on the following Tuesday.[6] Davis did not tell ADA Mitchell that Mr. Miller claimed that the fine had been paid.

Davis departed the Knox County jail at approximately 3:00 P.M. after speaking with ADA Mitchell, leaving Ms. Miller at the jail in the custody of the Knox County Sheriff's Department. Around this time, a Kennebec County dispatcher told Sargent Daniel of the Knox County Sheriff's Office that Ms. Miller's warrant indicated that she was to be taken directly to a judge. No one at the Knox County Jail called Desjardin, Clerk of the Kennebec County Superior Court, for guidance as to the meaning of the warrant's language.

Later that day, Mr. Miller arrived at the Knox County jail bearing the canceled check proving that his wife's fine had been paid. He told an unidentified Knox County deputy that he had the canceled check and he was there to bail out his wife. The deputy told Mr. Miller that there was no bail regardless of the canceled check. Mr. Miller left, but later called the Knox County jail and again attempted to arrange bail. An unidentified Knox County corrections officer told him that his wife could not be freed on bail.

As part of the intake process at the Knox County jail, Ms. Miller was required to shower and submit to a strip search. While naked, Ms. Miller was further re-

quired to squat and cough. She then was placed in a maximum security cell. Male inmates in the two adjoining cells taunted her throughout her stay. After a visit from her husband and another from her in-laws, Ms. Miller was subjected to strip searches and required to squat and cough. The Policies and Procedures Manual of the Knox County Jail ("Manual") authorizes strip searches of pre-trial inmates who are being held for murder, and Class A, B or C crimes or when there is reasonable suspicion to believe that an inmate is concealing contraband and is about to come in contact with other inmates of the facility. Body cavity searches are authorized only when there is probable cause to believe an inmate is concealing contraband or evidence inside a body cavity, and then only with a warrant, unless there are exigent circumstances. Jeffrey Fuller ("Fuller") was a corrections officer on duty at the Knox County jail on Saturday, April 13, 1996. Daniel G. Davey ("Davey") was the Sheriff of Knox County during the time relevant to Plaintiffs' claims.

Following several calls on Ms. Miller's behalf by Attorney Pamela Ames, Mr. Miller was allowed to bail out his wife on Monday, April 15, 1996 with the condition that she appear in Kennebec County Superior Court the next day.

## III. DISCUSSION

As specified above, Plaintiffs' Complaint asserts that Defendants violated Ms. Miller's rights under several different constitutional amendments. In their (Corrected) Response to Defendants' Motions for Summary Judgment, however, Plaintiffs concede that "for purposes of liability under Section 1983, this case should be analyzed under the Fourth amendment standards governing unreasonable searches

---

patchers. There are no training manuals for Kennebec County dispatchers concerning the execution of warrants.

**6.** Shortly before or after his conversation with Davis, ADA Mitchell told a Kennebec County

dispatcher that he believed the phrase "be brought immediately before a judge" printed on the warrant meant "immediately within a reasonable time period."

and seizures as applied to the States through the Fourteenth Amendment to the United States Constitution." ((Corrected) Resp. Defs.' Mots. Summ. J. at 6.) The Court therefore will confine itself to an examination of the Fourth Amendment liability of (1) Davis and Rockport arising out of Ms. Miller's arrest, (2) Lamoreau, Jane Doe, and Kennebec County for their role in Ms. Miller's arrest and incarceration at the Knox County Jail, and (3) Davey, Fuller, and Knox County for events at the jail. Following its analysis of the Fourth Amendment claims, the Court briefly will address Plaintiffs' tort claims.

## A. Fourth Amendment

### 1. Liability of Davis and Rockport

### a. Davis

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. Plaintiffs correctly assert that Ms. Miller was seized within the meaning of the Fourth Amendment when Davis informed her that she was under arrest, placed her in the back seat of a police car, and transported her to the Knox County Jail. They claim that this seizure was unreasonable because it contravened the arrest warrant specifying that the subject must be taken immediately before a judge.

Davis contends that he acted reasonably on the basis of a facially valid arrest warrant and that, in any case, he is entitled to qualified immunity because a reasonable officer would not have known that what he was doing violated clearly established law.

While objective reasonableness is the standard by which a court determines both substantive liability under the Fourth Amendment and qualified immunity under 42 U.S.C. § 1983, the Supreme Court has recognized that a police officer who violates the Fourth Amendment nevertheless may enjoy qualified immunity. *See Anderson v. Creighton,* 483 U.S. 635, 643, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In this case, since the Court is satisfied that Davis is entitled to qualified immunity, it need not reach the question of whether his conduct constituted a Fourth Amendment violation.

■ To assess a claim of qualified immunity a court must determine (i) whether the plaintiff has alleged the violation of a clearly established right, and (ii) whether a reasonable, similarly situated defendant would have understood that the challenged conduct violated that clearly established right. *See Swain v. Spinney,* 117 F.3d 1, 9 (1st Cir.1997); *Comfort v. Town of Pittsfield,* 924 F.Supp. 1219, 1227 (D.Me.1996). Davis argues that a reasonable officer would not have believed that an arrest of Ms. Miller was unreasonable under the circumstances. As evidence of the reasonableness of his conduct, Davis points to the undisputed fact that the arrest warrant for Ms. Miller was facially valid. Davis also claims that the language of the arrest warrant itself was ambiguous. He contends that he acted reasonably in the face of such ambiguity by seizing Ms. Miller, consulting with ADA Mitchell as soon as possible after the seizure, and following his advice. Davis further claims that he was under no reasonable obligation to rely on the Kennebec County dispatcher's interpretation of the warrant.

While "an arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action," *Fair v. Fulbright,* 844 F.2d 567, 569 (8th Cir.1988) (citing *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)), Plaintiffs maintain that the seizure of Ms. Miller violated the Fourth Amendment because that it exceeded the scope of the warrant. According to Plaintiffs, the warrant unequivocally mandated that Ms. Miller immediately be brought before a sitting judge. Because Davis was aware that there was no judge available until the Tuesday, his seizure of Ms. Miller on Saturday was unauthorized by the warrant and therefore unreasonable.

■ Plaintiffs provide no support for the proposition that arrests which exceed the scope of the warrant are per se unreasonable. Nevertheless, generalizing from case law concerning the execution of search warrants, the Court assumes that an arrest supported only by a warrant must be conducted within the constraints of that warrant. *See United States v. Upham,* 168 F.3d 532, 536 (1st Cir.1999) (observing that "[i]t is settled law that the search and seizure conducted under a warrant must conform to the warrant"). The Court does not accept, however, Plaintiffs' argument that the language on the particular warrant at issue in this case was unambiguous. For one thing, the heading of the warrant directing the arresting officer to "bring[ ] defendant immediately before a sitting judge" arguably is contradicted by language in the body of the warrant commanding the officer to "arrest said defendant and bring her before the court," as well as by language regarding bail which suggests that the defendant could be brought to jail rather than to court. Moreover, the evidence indicates that even between Kennebec County dispatcher and ADA Mitchell there was disagreement as to the meaning of the warrant.

Fortunately, the Court does not need to construe the language of the warrant to decide the issue at hand. It is enough to find that when confronted with this ambiguity, Davis did everything a reasonable officer could be expected to do. After confirming the existence of the warrant with Kennebec County via the Rockland dispatcher, Davis certainly was not unreasonable in rejecting the advice of the Kennebec County dispatcher and deciding to take custody of Ms. Miller pending further clarification of the warrant's language since the dispatcher had no supervisory authority over him and no legal training.

Moreover, though Davis could have elected to wait at the Miller residence until Mr. Miller produced the canceled check, he was not unreasonable in declining to do so. *See Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (finding that police officer "executing an arrest warrant is not required to investigate every claim of innocence"); *Whiting v. Kirk,* 960 F.2d 248, 252 (1st Cir.1992). Davis also was not unreasonable in abiding by the advice of ADA Mitchell, the most qualified person available to interpret the language of the warrant.[7] *See Arnsberg v. United States,* 757 F.2d 971, 981–82 (9th Cir.1985) (finding that "it would be plainly unreasonable to rule that the arresting officers ... must take issue with the considered judgment of an assistant United States Attorney and the federal magistrate"); *Lavicky v. Burnett,* 758 F.2d 468, 476 (10th Cir.1985) ("If the sheriff's duty is unclear, it should be a defense that he relied upon the advice of the prosecuting attorney's office."). Though Davis did not tell ADA Mitchell about Mr. Miller's claims that the fine had been paid and that he had the canceled check, Davis had not seen the check or any other document confirming Ms. Miller's claims of innocence when he spoke to Mitchell.

The First Circuit's opinion in *Torres Ramirez v. Bermudez Garcia,* 898 F.2d 224 (1st Cir.1990), cited by Plaintiffs, can be distinguished on its facts. In *Torres Ramirez,* the First Circuit held that the district court did not err in finding that the defendant was not entitled to qualified immunity because there was evidence that the defendant processed an arrest warrant that he knew or should have known had been vacated. *See Torres Ramirez,* 898 F.2d at 228. Here, Davis had no reason to know that the warrant should have been recalled, nor had he reason to know how it was to be executed.

7. Plaintiffs cite *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) to support the proposition that police misconduct is not immunized from liability even when it is based on erroneous legal advice.

The issue in *Burns,* however, was whether a *prosecutor* was entitled to absolute or qualified immunity from liability for erroneous advice he gave police. *See Burns,* 500 U.S. at 496, 111 S.Ct. 1934.

The Supreme Court has held that qualified immunity is designed to protect "all but the plainly incompetent or those who knowingly violate the law" from liability for money damages in civil rights actions. *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). On the record in this case, no reasonable jury could find that Davis knowingly violated the law when he arrested Ms. Miller nor could it characterize his actions as incompetent under the circumstances. The Court therefore grants Davis's Motion for Summary Judgment as to Count III.[8]

#### b. Rockport

 A municipality may incur liability under 42 U.S.C. § 1983 when its official policies or customs cause a constitutional deprivation. *See Comfort v. Town of Pittsfield*, 924 F.Supp. 1219, 1233 (D.Me. 1996). To prevail on a municipal liability claim, a plaintiff must show (1) a municipal custom or policy, and (2) that this custom or policy was "the cause of and the moving force behind the deprivation of constitutional rights." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability" against a municipality but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact." *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

 Assuming for the sake of argument that Davis's arrest of Ms. Miller constituted a violation of the Fourth Amendment, Plaintiffs have presented no evidence whatsoever that Rockport promulgated any policy or tolerated any custom that encouraged or condoned unconstitutional arrests of this type by its police officers. There also is no evidence that such any such custom or policy, as opposed to the individual judgment exercised by Davis, was the moving force behind the assumed constitutional deprivation. Likewise, beyond the bare fact that the arrest occurred, there is no evidence that Davis's training with respect to the execution of warrants was inadequate or resulted in the arrest of Ms. Miller. *See Bordanaro v. McLeod*, 871 F.2d 1151, 1159–60 (1st Cir. 1989) (upholding jury finding that city was liable for policy regarding training and supervision of police officers because "jury was not asked to infer the existence of this policy based solely on [the particular incident giving rise to the suit]").

Rockport's Motion for Summary Judgment is granted as to Count II.

#### 2. Liability of Lamoreau, Jane Doe, and Kennebec County

 It is undisputed that an employee of the Kennebec County Superior Court failed to recall the arrest warrant for Ms. Miller after she paid her fine and that Kennebec County dispatchers as well as ADA Mitchell conferred with Davis as to the proper execution of the arrest warrant. There is no evidence, however, that any Kennebec County employee, including Jane Doe,[9] affected a Fourth Amendment

---

8. The Court also grants summary judgment in favor of Davis on Count I to the extent that it states a Fourth Amendment claim for the use of excessive force since Ms. Miller herself admits that she was not so much as handcuffed during the arrest.

Similarly, Plaintiffs have not provided evidence that Davis had the power or the responsibility to arrange bail for Ms. Miller, nor have they explained how a denial of bail might constitute a Fourth Amendment violation.

9. The Court also has no personal jurisdiction over Jane Doe as Plaintiffs have not made any progress in locating or serving her in the 16 months since this suit was filed. *See Figueroa v. Rivera*, 147 F.3d 77, 82–83 (1st Cir.1998) ("under Fed.R.Civ.P. 4(m), a district court may dismiss a complaint without prejudice as to a particular defendant if the plaintiff fails to serve that defendant within 120 days after filing the complaint"); *Glaros v. Perse*, 628 F.2d 679, 685 (1st Cir.1980) (holding that district court prepared to act on dispositive motions is not "obliged to wait indefinitely for

seizure of Ms. Miller. Because no employee of Kennebec County inflicted a constitutional injury on Ms. Miller, Plaintiffs' claims of supervisory and municipal liability against Kennebec County and its employees pursuant to section 1983 claim must fail. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (holding that municipality cannot be held liable under Fourth Amendment if there is no underlying constitutional violation by individual officer); *Evans v. Avery,* 100 F.3d 1033, 1039–40 (1st Cir.1996); *Natal v. City of New Bedford,* 37 F.Supp.2d 74, 75 (D.Mass.1999) ("If ... this Court grants [police officer's] summary judgment motion on the issue of liability rather than qualified immunity, [plaintiff's] claims against the City and [the mayor and the chief of police] are moot.").

The Court grants summary judgment in favor of Lamoreau and Jane Doe as to Count II and in favor of Kennebec County as to Count III.

### 3. Liability of Fuller, Knox County, and Davey

Plaintiffs allege that Ms. Miller's Fourth Amendment rights were violated when she was forced to endure multiple strip searches and body cavity searches during her three day stay at the Knox County Jail. Defendants deny this allegation and argue, in the alternative, that if the searches did occur, they were constitutionally sound.

The First Circuit and other courts have recognized that strip searches and visual body cavity searches "constitute an extreme intrusion upon personal privacy as well as an offense to the dignity of the individual." *Wood v. Clemons,* 89 F.3d

[plaintiff] to take steps to identify and serve 'unknown' defendants").

**10.** Though the deadline for completion of discovery in this case was April 20, 1999, Plaintiffs have failed to present any evidence as to the identity of the person or persons who conducted the strip and body cavity searches of Ms. Miller. For purposes of deciding these

922, 928 (1st Cir.1996) (referring to strip searches); *Swain v. Spinney,* 117 F.3d 1, 6 (1st Cir.1997) (discussing strip searches and visual body cavity searches). For this reason, the Fourth Amendment requires that "strip and visual body cavity searches must be justified by at least a reasonable suspicion that the arrestee is concealing contraband or weapons." *Swain,* 117 F.3d at 7. In the present case, there is ample evidence from which a jury could conclude that the strip and body cavity searches to which Ms. Miller was subject while in the custody of the Knox County jail were not supported by the requisite level of suspicion. Most significant is the fact that the nature of the offense for which Ms. Miller was detained—failure to pay a fine—gave jail personnel absolutely no grounds to suspect that she possessed contraband or weapons. The issue here, then, is not whether the searches violated Ms. Miller's constitutional rights, but whether any of the defendants named in the Complaint can be held responsible for the violation.[10] The Court finds that they cannot.

#### a. Fuller

In his deposition, Fuller acknowledges that he was working as a corrections officer at the Knox County Jail when Ms. Miller was brought there on April 13, 1996. There is no evidence, however, that Fuller was personally involved in the strip search or visual body cavity search of Ms. Miller on that day at any other time during her detention. There also is no allegation that Fuller participated in the searches in any type of supervisory capacity. Thus, section 1983 provides no basis upon which to find Fuller liable for the deprivation of Ms. Miller's constitutional rights. The Court

motions, however, the Court is willing to infer that whoever conducted the searches was an unidentified Knox County employee, but the Court cannot impose liability for a clear violation of constitutional rights when there is no evidence presented us as to who violated those rights.

grants summary judgment in favor of Fuller on Count IV.

### b. Knox County

As set forth above in Part III.A.1.b, a municipality is subject to liability under 42 U.S.C. § 1983 when its policies or customs cause a constitutional deprivation. To the extent that Plaintiffs' claim against Knox County is based on the deposition testimony of Fuller that the Knox County Jail had a policy of strip searching anyone who could not make bail, the Court finds that this policy (if it existed) is not attributable to Knox County.

 Liability for an unconstitutional policy or custom may be attributed to a municipality only if it is "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. McLeod,* 871 F.2d 1151, 1156 (1st Cir.1989). Even assuming that Davey could be classified as a policymaker for these purposes, there is no evidence that he had actual knowledge that strip and body cavity searches were being conducted in contravention of Knox County's written policy and pursuant to the unwritten custom to which Fuller alludes. In addition, Plaintiffs have produced no evidence of similar searches from which a jury could infer that " 'the practices have been so widespread or flagrant that in the proper exercise of [his] official responsibilities [Davey] should have known of them.' " *Id.* (reciting standard for constructive knowledge) (quoting *Spell v. McDaniel,* 824 F.2d 1380, 1387 (4th Cir.1987)); *see also Altman v. Kelly,* 36 F.Supp.2d 433, 435 (D.Mass.1999) ("The law is exceedingly clear ... that such a policy or custom cannot be established on the basis of a single event alone.") (citing *Mahan v. Plymouth County House of Corrections,* 64 F.3d 14, 16–17 (1st Cir.1995)).

The Court therefore grants summary judgment in favor of Knox County as to Count II.

### c. Davey

 Davey was the Sheriff of Knox County during the period relevant to Plaintiffs' claims. As supervisor of the Knox County Jail, Davey is potentially liable for constitutional violations perpetrated on pre-trial detainees such as Ms. Miller. To demonstrate a supervisor's liability under Section 1983 for the constitutional violation of a subordinate, a plaintiff must show that (i) "the supervisor's conduct or inaction amounts to either deliberate, reckless or callous indifference to the constitutional rights of others," and that (ii) "an affirmative link exists between the street-level constitutional violation and the acts or omissions of the supervisory officials." *Comfort v. Town of Pittsfield,* 924 F.Supp. 1219, 1231 (D.Me.1996) (citing *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989)).

 In this case, Plaintiffs rely on the theory that employees were not adequately trained. Specifically they state, "although Knox County has written policies with respect to strip searches in the jail, apparently staff was given no practical training with respect to the application of those policies since they were not followed in this case." [11] (Pls.'s Resp. Defs.'s Mot.

---

11. At least insofar as they were applicable to Ms. Miller, the Court finds constitutional Knox County's policy on strip and body cavity searches. The Knox County Policy and Procedure Manual provides in relevant part:

3. Strip searches will **NOT** be conducted at the time of arrest or admission on pre-trial inmates charged with class D, E, or other misdemeanor offense unless the officer has **REASONABLE SUSPICION** to believe that an inmate is concealing contraband and is about to come in contact with other inmates of the facility....

4. **BODY CAVITY SEARCHES**, other than searches of the mouth, shall be conducted in compliance with the following rules:

a. **ONLY** when authorized by the Jail Administrator when there is **PROBABLE CAUSE** to believe an inmate is concealing

Summ. J. at 16.) Such an inference is entirely unwarranted. *See Colon v. Rivera,* 846 F.Supp. 156, 162 (D.P.R.1993) (finding no supervisory liability for officers' use of force where there was no evidence of any prior civilian complaints against officers nor any other evidence that officers were prone to misconduct). Plaintiffs not only have failed to adduce direct evidence concerning the training of the particular employee or employees who performed the searches at issue, they have failed to put forth evidence tending to show a deficiency in the training of *any* Knox County Jail employee. Without such evidence, a reasonable jury could not possibly conclude that there was a causal link between the acts or omissions of Davey and the constitutional violations.

The Court grants summary judgment in favor of Davey as to Count III.[12]

## B. Tort Claims

█ Plaintiffs have asserted claims against one or more Defendants for negligence, negligent and intentional infliction of emotional distress, and loss of consortium. In light of the fact that the Court has granted summary judgment in favor of Defendants on Plaintiffs' constitutional claims, the Court declines to exercise its supplemental jurisdiction over these remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Mercado–Garcia v. Ponce Federal Bank,* 979 F.2d 890, 896 (1st Cir.1992) ("Once the court dismissed some of the federal claims and resolved the others before trial by summary judgment, it had the discretion also to dismiss the pendent state claims."); *Martinez v. Colon,* 54 F.3d 980, 990 (1st Cir.1995) ("once the court determined so far in advance of trial that no legitimate federal question existed, the jurisdictional basis

for plaintiff's pendent claims under Puerto Rico law evaporated"). Plaintiffs may pursue these claims in state court.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motions for Summary Judgment are GRANTED as to Counts II and III. The Court declines to exercise its jurisdiction over the remaining state claims.

*SO ORDERED.*

(Pls.'s Statement of Material Facts Ex. D.)

---

inside a bady [sic] cavity contraband or evidence of a crime; and

 b. Conducted pursuant to a warrant issued upon probable cause. The warrant may be dispensed with, however, in cases of consent (in writing or witnessed by two officers), or exigent circumstances;

**12.** Since Plaintiffs have articulated no legal theory whatsoever as to how the failure of Knox County to release Ms. Miller on bail violated her Fourth Amendment rights, the Court declines to speculate on this issue.